MASSEE *v.* SCHILLER.

5-3214                                             376 S. W. 2d 558

Opinion delivered March 16, 1964.

*Ben Core* and *John B. Hainen*, for appellant.

*Shaw & Shaw*, for appellee.

JIM JOHNSON, Associate Justice. This suit involves ownership of a 20-foot strip of land 1,020 feet in length along the south edge of a quarter-quarter section, part of which is used as a road. Appellants J. N. Massee and his wife, Jenness Massee, own a parcel of land in Polk County described as the SE-¼ of the SE-¼ of Section 36, which is immediately south of the property of appellees, Bruno Schiller and his wife Berta, who own most of the NE-¼ of the SE-¼ of Section 36. Between them is the strip of land here in dispute, the south 20 feet of the NE-¼ of the SE-¼. The west 498 feet of that strip is now being used as a road into appellants' property. During 1960 appellees built a fence on the south side of the eastern part of the strip (the eastern 822 feet), placing it approximately on the line dividing the NE-¼ from the SE-¼. This action apparently precipitated appellants' suit in Polk Chancery Court. Appellants filed suit on January 15, 1963, praying that the court quiet and confirm title to the south 20 feet of the NE-¼ of the SE-¼ of Section 36 in appellants; that appellees be ordered to remove the fence to the north side of the strip, and that appellees be restrained from relocating fencing on this property. Appellees answered, admitting that the strip had once been used in its entirety as a "passageway" or lane, but that the eastern 790 feet of the lane had been abandoned for more than seven years as a roadway and is under fence which separates the lands owned by the parties, and further that 520 feet of the lane is still being used by appellants for ingress and egress to their property, but that such use is with the permission and acquiescence of appellees, is only a roadway easement and is not adverse to appellees' fee simple title to the land over which the roadway easement

crosses. On oral motion, the court gave either party the right to have a survey made of the disputed area. Appellees then amended their answer, praying that the court quiet title to the 20-foot lane in them, subject only to the roadway easement which appellants are using across the west 498 feet of the lane; and further prayed that the court order boundary line fences to be located on the true boundary line at the expense of both parties equally. Trial of the cause was had before the chancellor on March 13, 1963. After testimony of the parties, former owners, surveyors and other witnesses, the court: (1) established the boundary line between the two quarter-quarter sections as the line indicated by the court-ordered survey which was on an old fenceline which divides these two forty-acre tracts of land, (2) found that appellants' claim of ownership of the east 822 feet of the lane "is without merit, as this old lane has long been abandoned and lies wholly upon the lands owned by" appellees, (3) found that appellants do have an easement for roadway purposes over the west 498 feet of the lane, which roadway was found to exist by prescription, and (4) found that appellees have no claim of ownership to anything south of the old established fence and survey line. The court then quieted title in the north tract in appellees, "subject to a roadway easement across the south side of the west 498 feet of that tract as the same is now located" and dismissed appellants' complaint. From the decree appellants have pursued this appeal.

Appellants claim ownership of the lane by adverse possession, and testimony relative to dominion and fences goes back before 1918 to a common owner, M. H. Howard. However, review of the testimony and pleadings reveals that at a later date a Dr. Douglas also owned both parcels of land at the same time. He acquired the north parcel in 1930, which he conveyed to appellees in 1933. This purchase of the north parcel by Dr. Douglas, who at the time owned the south parcel, annihilated any inferior interest or title such as adverse possession or easement the doctor might have acquired against the former

owners of the north parcel. See 31 C.J.S., *Estates,* §§ 123-131; 19 Am. Jur., *Estates,* § 135. When Dr. Douglas later conveyed the north parcel to appellees, he conveyed it absolutely, not reserving or excepting any part of the lane, and in so doing conveyed the property free of any prior adverse possession. The effect of the chancellor's findings was that adverse possession had not been established since the time of the doctor's conveyance to appellees. Nor does the evidence clearly show whether an easement for roadway purposes was established on the east 822 feet of the lane subsequent to Dr. Douglas' conveyance to appellees, but if there was such an easement, the evidence is virtually conclusive that it has long since (well over seven years) been abandoned and its use therefore properly reverted to the owners of the servient estate, the appellees. *Fulcher* v. *Dierks,* 164 Ark. 261, 261 S. W. 645; *Clinton Chamber of Commerce* v. *Jacobs,* 212 Ark. 776, 207 S. W. 2d 616. The evidence also clearly establishes, as admitted by appellees' answer, that appellants have an easement for road purposes across the west 498 feet of the lane for ingress and egress. On the whole case on trial de novo, we cannot say that the chancellor's findings are against the preponderance of the evidence. The decree is therefore affirmed.