Cloyd H. BARNES *v.* Mary K. BARNES

81-179                                    627 S.W. 2d 552

Supreme Court of Arkansas
Opinion delivered February 8, 1982

*Bill Walters,* of *Walters, Davis & Cox, P.A.,* for appellant.

*Rex M. Terry,* of *Hardin, Jesson & Dawson,* for appellee.

ROBERT H. DUDLEY, Justice. On September 10, 1971, Cloyd and Etta Barnes sold thirty acres to J. B. and Mary K. Barnes, their son and daughter-in-law. The conveyance was by warranty deed with no reservation by the grantors. The deed was executed, delivered and recorded on the same day. The grantees, the son and daughter-in-law, simultaneously executed an instrument styled "Sales Agreement." It sets forth the terms of payment, which have been paid-in-full, and concludes "Cloyd Barnes may have partnership use of

the above described property as long as he wishes." This instrument was executed only by the son and daughter-in-law and was not recorded at the time. A little over eight years later, on December 19, 1979, the son died and Mary K. Barnes, as survivor, acquired absolute title. Eight days later, on December 27, 1979, Cloyd Barnes filed for record the sales agreement. The daughter-in-law, Mary K. Barnes, then filed suit seeking a declaratory judgment that Cloyd Barnes, appellant, had no interest in the property. The appellant asked that his partnership use of the property be confirmed. The issues of reformation, estoppel, or damages were not raised below. On the sole issue raised, confirmation of partnership use, the chancellor held that the warranty deed was absolute on its face and that the sales agreement was void for vagueness. We affirm.

The deed is absolute on its face. The appellant, one of the grantors, reserved no interest in the title. Ark. Stat. Ann. § 50-403 (Repl. 1971) provides that an estate of fee simple is presumed to be conveyed by any deed of conveyance unless that estate is expressly limited by words in the deed. Appellant urges us to examine the sales agreement and use rules of construction to interpret the deed. We decline, because we do not resort to rules of construction when a deed is clear and contains no ambiguities. *Coffelt* v. *Decatur School District No. 17*, 212 Ark. 743, 208 S.W. 2d 1 (1948). We apply rules of construction only when the meaning of a deed or the intention of the parties is ambiguous, uncertain or doubtful. *Gibson* v. *Pickett*, 256 Ark. 1035, 512 S.W. 2d 532 (1974). The sales agreement is merged into the clear deed. *Duncan* v. *McAdams*, 222 Ark. 143, 257 S.W. 2d 568 (1953).

Additionally, the chancellor was correct in reasoning that even if the deed had not been clear the appellant could not prevail because of the vagueness of the terms "partnership use" and "as long as he wishes." These terms, as used, are vague to the extent that they are not susceptible to being understood. A court cannot enforce a contract which it cannot understand. Indeed, there is a basic question of whether the instrument is a contract since appellant did not execute it. Aside from that question, the language used is incomprehensibly vague, not simply ambiguous in the

sense it is susceptible to two or more different meanings. For example, it is impossible to determine if the word "partnership" was executed or executory and was with the other grantor, the son, the appellee daughter-in-law, some other person, or one, some or all of them. It is impossible to determine when the partnership would begin or would terminate and upon what conditions. It is impossible to know what interest a "use" creates, whether it is merely a possessory interest or is an ownership interest, whether it could be conveyed, what, if anything, the user pays and how that amount is decided. It is impossible to determine how a use is divided among users. "As long as he wishes" is equally vague. It is impossible to understand whether the appellant can convey his use, or whether it is the reservation of some interest for as long as appellant is able to use the acreage, or for life. Appellant may wish his grandchildren and great-grandchildren have the use of the property and could cloud the title into perpetuity. Such vagueness is not enforceable.

The deed is clear and conveys absolute title and is not subject to modification by a vague instrument.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I dissent from the majority opinion which I feel is an incorrect interpretation and application of the law as well as a most unjust decision. I realize we are frequently forced by law to make unjust decisions but this one was freely and voluntarily made by the court.

This is a typical case of parents wishing to see that their children receive their property at the time of their death. However, the parents in this case deeded a small farm to their son and at the same time reserved the right of the father to work the land as long as he desired. There is no indication that the "sales agreement" was not executed before the "warranty deed." No doubt, the deed was given with the expectation that it would complete the transaction which had been agreed upon in the "sales agreement." The

parents, no doubt, desired to keep peace and harmony in the family and therefore included the name of their daughter-in-law, the present appellee, on the deed with the name of their son. This farm had been jointly tended by the father and the son many years before the instruments mentioned above were executed. In fact, they continued to tend the property together and share in the profits until the death of the son in 1979. The father even divided the profits of the farm with the widow of his son, his daughter-in-law, the present appellee, during the year following his son's death.

The widow moved to Texas and in 1980 filed this suit to get title free and clear in her own name. A more unjust and unconscionable claim could not be presented to a court of equity. I will not be a part of allowing this woman to take this property from these old people.

These two instruments were executed simultaneously and all parties acknowledged that they knew what the instruments were. Mary K. Barnes, in addition to signing the "sales agreement," accepted the benefits of the agreement for many years and then after her husband died she decided to renege on the agreement. At least since 1908 we have held that the conduct of the parties to an agreement is evidence of the parties' understanding and intentions concerning the agreement. *Field* v. *Morris*, 88 Ark. 148, 114 S.W. 2d 206 (1908). No one can seriously deny that the words in the agreement were carried out for a number of years and the action of the parties is clearly in compliance with the plain meaning of the language used in these agreements.

I agree with the appellant's statement that it is a general rule that in construing separate writings that make up one contract even though there were contemporaneous instruments drawn at the same time such instruments will be construed as constituting one contract. *Quillen* v. *Twin City Bank*, 253 Ark. 169, 485 S.W. 2d 181 (1972). The parties in the present case did approximately the same thing as has been done thousands of times when a grantor gave an absolute deed and at the same time the grantee executed a mortgage on the same property. Therefore, I would reverse and hold that the father has the right to work this land as long as he lives or desires.